EXHIBIT "A"

MICHAEL K. JEANES, CLERK
BY
B. Ruiz DEP
B. RETH FILED
16 JUN 29 PM 3: 51

Peter Strojnik
Strojnik P.C.
1 E. Washington St. Suite 500
Phoenix, AZ 85004
(774) 768-2234
Bar No. 6464



# ORIGINAL

### IN THE COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

Advocates for Individuals with Disabilities,
Foundation, Inc.,

                                    Plaintiff,

vs.

GOLDEN RULE PROPERTIES LLC,

                                    Defendant.

Case Number: CV2016-006898

DECLARATION OF SERVICE BY A
PRIVATE PROCESS SERVER

Received by Rush Hour Legal Service to be served on GOLDEN RULE PROPERTIES LLC (2706 E University Dr).

I, Tanner Mennenga, do hereby affirm that on the 21st day of June, 2016 at 1:20 pm, I:

served GOLDEN RULE PROPERTIES LLC (2706 E University Dr) by delivering a true copy of the SUMMONS; VERIFIED COMPLAINT; CERTIFICATE OF ARBITRATION; DISCOVERY REQUEST NO.1 with the date and hour of service endorsed thereon by me, to: GREG PAGE (STATUTORY AGENT) at the address of: 443 E PAGE AVE, GILBERT, AZ 85234, and informed said person of the contents therein, in compliance with state statutes.

Description of Person Served: Age: 40, Sex: M, Race/Skin Color: Hispanic, Height: 5'10", Weight: 180, Hair: Brown, Glasses: N

I, being fully qualified under ARCP 4(e) to serve process within the State of Arizona and having been so appointed by Maricopa County Superior Court, Declare under penalty of perjury that the foregoing is true and correct and was executed on the above date.


_Tanner Mennenga_
Tanner Mennenga
Process Server MC-8654

Rush Hour Legal Service
P.O. Box 30997
Mesa, AZ 85275
(480) 797-9483

Our Job Serial Number: RUL-2016000190
Service Fee: $55.00

Copyright © 1992-2016 Database Services, Inc. - Process Server's Toolbox V7.1e



MICHAEL K. JEANES
Clerk of the Superior Court
By Megan Racer, Deputy
Date 06/09/2016 Time 14:23:47
Description                    Amount
--------- CASE# CV2016-006898 ---------
CIVIL NEW COMPLAINT              319.00
---------------------------------------
TOTAL AMOUNT                     319.00
        Receipt# 25297126

Peter Strojnik, State Bar No. 6464
**STROJNIK P.C.**
1 EAST WASHINGTON STREET, SUITE 500
PHOENIX, AZ 85004
(774) 768-2234
Attorney for Plaintiff
Case Specific Email Address:
2706EUNIVERSITYDR@aadi.org
www.aid.org

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ADVOCATES FOR INDIVIDUALS WITH DISABILITIES FOUNDATION, INC., a charitable non-profit foundation,<br><br>Plaintiff,<br><br>vs.<br><br>GOLDEN RULE PROPERTIES LLC;<br><br>Defendant. | Case No:  CV2016-006898<br><br>**VERIFIED COMPLAINT** |

Plaintiff alleges:

### PARTIES

1.  Plaintiff, Advocates for Individuals with Disabilities Foundation, Inc. ("Foundation") is a non-profit charitable foundation. *See* www.aid.org.

2.  Defendant, GOLDEN RULE PROPERTIES LLC, owns and/or operates a business located at 2706 E University DR  Mesa AZ 85213  which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(A) which offers public lodging services.

### INTRODUCTION

3.  Plaintiff brings this action against Defendant, alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., (the "ADA") and its

implementing regulations and A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et seq. and its implementing regulations, R10-3-401 et seq. (the "AzDA")

4.  Plaintiff is a charitable non-profit foundation. Plaintiff is known to have past, present and future relationships or associations with individuals with disabilities as defined in 28 CFR § 36.205. In connection with 28 CFR §36.205, and generally relating to third-party standing, Plaintiff alleges:

   a.  Plaintiff has a close relationship with former, current and future disabled individuals who are directly protected by the ADA as discrete and insular minorities. *See*, e.g., www.aid.org.

   b.  Plaintiff's association with former, current and future disabled individuals arises from Plaintiff's charitable acts of giving to the disabled community, which are interests that are germane to the association's purpose.

   c.  Plaintiff's close relationship to the third party disabled individuals is such that a third party disabled individuals cannot be reasonably expected to properly frame the issues and present them with the necessary adversarial zeal to the Court. Third party disabled individuals are hindered to litigate by virtue of their status as minors and/or their lack of mobility and/or financial resources.

   d.  Because only injunctive and declaratory relief is requested, participation in the action by individual disabled individuals is not required.

5.  Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate public accommodations that are fully accessible to, and independently usable by, disabled people. Plaintiff seeks a declaration that Defendant's public accommodation violates federal law and an injunction requiring Defendant to install means of access in compliance with ADA requirements so that their facility is fully accessible to, and independent usable by, disabled individuals. Plaintiff further requests that, given Defendant's historical failure to comply with the ADA's mandate, the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant comes into compliance with the relevant requirements of the ADA, and to ensure that

2

Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

6. In compliance with R10-3-405(H)(1), Plaintiff's address is 40 North Central Avenue, Suite 1400, Phoenix, Arizona 85004

## JURISDICTION AND VENUE

7. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188.

8. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

9. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

10. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

11. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12. Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. §§ 12181-89.

13. Title III states, inter alia, that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." *See* 42 U.S.C. §12182(b)(1)(A)(ii). In addition, §12182(b)(1)(A)(iii) and §12182(b)(1)(B)] are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on,

3

among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities. 28 C.F.R. pt. 36, app. C (2011).

14. On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

15. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

16. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

17. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

18. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

19. On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

20. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

21. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.

**THE AzDA AND ITS IMPLEMENTING REGULATIONS**

22. The AzDA and its implementing regulations, §§41-1492 et seq. and R10-3-401 et seq. provide similar prohibitions and remedies to the ADA and its implementing regulations.

4

**ALLEGATIONS COMMON TO ALL COUNTS**

23. Pursuant to CFR 36-302(1)(ii) and otherwise, on or about 4/11/2016, Plaintiff, who is known to have a relationship or association with individuals with disabilities, conducted an investigation into Defendant's public accommodation for purposes of ascertaining whether it complies with the ADA. Plaintiff's investigation confirmed that Defendant's public accommodation was not accessible to individuals with disabilities in the following particulars:

    1. Violation of the 2010 ADA Standards of Accessibility Design §§216.5 and 502.6 in that it fails to identify van parking spaces by the designation "van accessible" and or fails to maintain the minimum height of 60 inches (1525 mm) above the finish floor

Plaintiff has actual knowledge of at least one barrier related to third party disabled individuals as indicated in the preceding allegation. Therefore, third party individuals with disabilities are currently deterred from visiting Defendant's public accommodation by accessibility barrier(s). Upon information and belief, there are other potential violations and barriers to entry that will be discovered and disclosed during the discovery and disclosure process.

24. Without the presence of adequate handicapped parking spaces, sufficient designation or signage and or sufficient disbursement of such parking spaces, third party individuals with disabilities are prevented from equal enjoyment of the Defendant's Public Accommodation.

25. As a result of Defendant's non-compliance with the AzDA and the ADA, third party individuals with disabilities will avoid and not visit Defendant's Public Accommodation in the future unless and until all AzDA and ADA violations have been cured.

26. The existence of barriers deters third party individuals with disabilities from conducting business or returning to Defendant's Public Accommodation. Upon information and belief, other disabled persons are also deterred from visiting there or otherwise precluded from frequenting Defendant's Public Accommodation due to its non-compliance with the AzDA and the ADA .

27. As a result of Defendant's non-compliance with the ADA, third party disabled individuals, unlike persons without disabilities, are denied equal access.

28. Upon information and belief, though Defendant may have centralized policies regarding the management and operating of its hotel, Defendant does not have a plan or policy that is reasonably calculated to make its entire facility fully accessible to and independently usable by, disabled people.

29. Plaintiff verified that Defendant's Public Accommodation lacks the mandatory elements required by the 2010 Standards to make their facility fully accessible to and independently usable by disabled people.

30. Plaintiff has a keen interest in whether public accommodations are fully accessible to, and independently usable by, individuals with disabilities, specifically including an interest in ensuring that parking spaces comply with the 2010 Standards.

31. Third party disabled individuals have been injured by Defendant's discriminatory practices and failure to remove architectural barriers to equal access. These injuries include being deterred from using Defendant's facilities due to the inaccessibility and/or insufficient designation of appropriate parking .

32. Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's Public Accommodation under ADA and AzDA.

## COUNT ONE
### (Violation of Title III of ADA)

33. Plaintiff incorporates all allegations heretofore set forth.

34. Defendant has discriminated against third party disabled individuals and others in that it has failed to make its public accommodation fully accessible to, and independently usable by, individuals who are disabled in violation of AzDA, Article 8, Chapter 10 of Title 41 of the Arizona Revised Statutes, A.R.S. §§ 41-1492 *et seq.* and its implementing regulations, R10-3-401 et seq. and the ADA, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and its implementing regulations 28 CFR §§ 36.101 *et seq.*

6

35. Defendant has discriminated against third party disabled individuals in that it has failed to remove architectural barriers to make its Public Accommodation fully accessible to, and independently usable by individuals who are disabled in violation of the AzDA and the ADA and, particularly, 42 U.S.C. §12182(b)(A)(iv) and Section 208.2 of the 2010 Standards, as described above. Compliance with the requirements of section 208.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's Public Accommodation nor result in an undue burden to Defendant.

36. Compliance with AzDA and the ADA is readily achievable by the Defendant due to the low costs. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense .

37. Conversely, the cessation of compliance with the ADA law is also readily achievable by redrawing the parking spaces to its original configuration and or changing signage back to the same. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[1].

38. Defendant's conduct is ongoing, Plaintiff invokes Plaintiff's statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees, both pursuant to statute and pursuant to the Private Attorney General doctrine .

39. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements

---

[1] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

7

of the AzDA and ADA that are discussed above, Defendant's non-compliance with the AzDA and ADA' mandatory requirements may be or are likely to recur.

## COUNT TWO
### (Violation A.R.S. Title 41, Chapter 9, Article 8, §§41-1492 et seq. AND Implementing Regulations)

40. Plaintiff realeges all allegations heretofore set forth.

41. Plaintiff has been damaged and injured by the Defendant's non-compliance with the AzDA.

42. Pursuant to A.R.S. § 41-1492.08, and §41-1492.09, plaintiff has the right to enforce the AzDA by the issuance of injunctive relief.

43. Pursuant to A.R.S. § 41-1492.08, Plaintiff is entitled to preventive and mandatory relief.

44. Mandatory relief includes relief mandated by A.R.S. § 41-1492.09 obligating the Office of the Attorney General to take actions specified therein.

45. Pursuant to A.R.S. § 41-1492.09(B)(2), Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $5,000.00.

46. Pursuant to A.R.S. § 41-1492.09(F), Plaintiff is entitled to attorney's fees and costs in an amount proven but in no event less than $5,000.00.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Public Accommodation was fully accessible to, and independently usable by, individuals with disabilities ;

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to

8

bring its public accommodation into full compliance with the requirements set forth in the ADA and its implementing regulations, so that the facility is fully accessible to, and independently usable by, disabled individuals, specifically Sections 208.2 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit, expenses of suit and attorney's fees;

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA and AzDA;

e. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of AzDA;

f. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to AzDA which directs Defendant to take all steps necessary to bring its facility into full compliance with the requirements set forth in the AzDA, and its implementing regulations, so that the facility is fully accessible to, and independently usable by, disabled individuals, specifically including ensuring parking spaces comply with the 2010 standards as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facility is fully in compliance with the relevant requirements of the AzDA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

g. For damages authorized by § 41-1492.09(B)(2) in an amount no less than $5,000.00;

9

h.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and A.R.S. § 41-1492.09(F) and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[2] in an amount no less than $5,000.00; and,

i.  The provision of whatever other relief the Court deems just, equitable and appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

RESPECTFULLY SUBMITTED this Friday, June 3, 2016.

STROJNIK P.C.



Peter Strojnik (6464)
Attorneys for Plaintiff

### VERIFICATION COMPLIANT WITH R10-3-405

I declare under penalty of perjury that the foregoing is true and correct.

DATED this Friday, June 3, 2016.

/s/ Fabian Zazueta

By: Fabian Zazueta, Authorized Agent
Advocates for Individuals with
Disabilities Foundation, Inc.

---

[2] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

10

1
2
3
4
5
6
7
8
9
10
11                            EXHIBIT 1
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                                  11

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*



Americans with Disabilities Act

# ADA Business BRIEF:

## Restriping Parking Lots

### Accessible Parking Spaces

When a business restripes a parking lot, it must provide accessible parking spaces as required by the ADA Standards for Accessible Design.

In addition, businesses or privately owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking lots when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases.

This ADA Business Brief provides key information about how to create accessible car and van spaces and how many spaces to provide when parking lots are restriped.



One of eight accessible parking spaces, but always at least one, must be van accessible.

### Accessible Parking Spaces for Cars

Accessible parking spaces for cars have at least a 60-inch-wide access aisle located adjacent to the designated parking space. The access aisle is just wide enough to permit a person using a wheelchair to enter or exit the car. These parking spaces are identified with a sign and located on level ground.

### Van-Accessible Parking Spaces

Van-accessible parking spaces are the same as accessible parking spaces for cars except for three features needed for vans:

- a wider access aisle (96") to accommodate a wheelchair lift;

- vertical clearance to accommodate van height at the van parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space, and

- an additional sign that identifies the parking spaces as "van accessible."

## Minimum Number of Accessible Parking Spaces
### ADA Standards for Accessible Design 4.1.2 (5)

| Total Number of Parking Spaces Provided (per lot) | Total Minimum Number of Accessible Parking Spaces (60" & 96" aisles) | Van-Accessible Parking Spaces with min. 96" wide access aisle | Accessible Parking Spaces with min. 60" wide access aisle |
|---|---|---|---|
| | Column A | | |
| 1 to 25 | 1 | 1 | 0 |
| 26 to 50 | 2 | 1 | 1 |
| 51 to 75 | 3 | 1 | 2 |
| 76 to 100 | 4 | 1 | 3 |
| 101 to 150 | 5 | 1 | 4 |
| 151 to 200 | 6 | 1 | 5 |
| 201 to 300 | 7 | 1 | 6 |
| 301 to 400 | 8 | 1 | 7 |
| 401 to 500 | 9 | 2 | 7 |
| 501 to 1000 | 2% of total parking provided in each lot | 1/8 of Column A* | 7/8 of Column A** |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/8 of Column A* | 7/8 of Column A** |

* one out of every 8 accessible spaces   ** 7 out of every 8 accessible parking spaces

October 2001

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3-feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more lots if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

## Free Technical Assistance

Answers to technical and general questions about restriping parking lots or other ADA requirements are available by telephone on weekdays. You may also order the ADA Standards for Accessible Design and other ADA publications, including regulations for private businesses, at any time day or night. Information about ADA-related IRS tax credits and deductions is also available from the ADA Information Line.

Department of Justice
**ADA Information Line**
**800-514-0301 (voice)**
**800-514-0383 (TTY)**

page 2 of 2

## Features of Accessible Parking Spaces for Cars

**Sign with the international symbol of accessibility mounted high enough so it can be seen while a vehicle is parked in the space.**

If the accessible route is located in front of the space, install wheelstops to keep vehicles from reducing width below 36 inches.



**Access aisle of at least 60-inch width** must be level (1:50 maximum slope in all directions), be the same length as the adjacent parking space(s) it serves and must connect to an accessible route to the building. Ramps must not extend into the access aisle.

**Boundary of the access aisle must be marked.** The end may be a squared or curved shape.

Two parking spaces may share an access aisle.

| 96" min | 60" min | 96" min. |
| 2440 | 1525 | 2440 |

## Three Additional Features for Van-Accessible Parking Spaces

**Sign with "van accessible"** and the international symbol of accessibility mounted high enough so the sign can be seen when a vehicle is parked in the space



**96" min. width access aisle,** level (max. slope 1:50 in all directions), located beside the van parking space.

**Min. 98-inch-high clearance** at van parking space, access aisle, and on vehicular route to and from van space

| 96" min. | 96" min. | 96" min. |
| 2440 | 2440 | 2440 |

## ADA Website and ADA Business Connection

You may also view or download ADA information on the Department's ADA website at any time. The site provides access to the ADA Business Connection and the ADA design standards, ADA regulations, ADA policy letters, technical assistance materials, and general ADA information. It also provides links to other Federal agencies, and updates on new ADA requirements and enforcement efforts. **www.usdoj.gov/crt/ada/adahom1.htm**

## Reference:

ADA Standards for Accessible Design (28 CFR Part 36):
§ 4.1.6 Alterations; § 4.1.2 Accessible Sites and Exterior Facilities: New Construction; § 4.6.1 Parking and Passenger Loading Zones; and § 4.3 Accessible Route.

Duplication is encouraged.

1
2
3
4
5
6
7
8
9
10
11
12
13                              EXHIBIT 2
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*



# A D A
Design Guide

**1**

# Restriping Parking Lots

## Accessible Parking Spaces

When a business, State or local government agency, or other covered entity restripes a parking lot, it must provide accessible parking spaces as required by the ADA Standards for Accessible Design. Failure to do so would violate the ADA.

In addition, businesses or privately-owned facilities that provide goods or services to the public have a continuing ADA obligation to remove barriers to access in existing parking lots when it is readily achievable to do so. Because restriping is relatively inexpensive, it is readily achievable in most cases.

This ADA Design Guide provides key information about how to create accessible car and van spaces and how many spaces to provide when parking lots are restriped.



## Accessible Parking Spaces for Cars

Accessible parking spaces for cars have at least a 60-inch-wide access aisle located adjacent to the designated parking space. The access aisle is just wide enough to permit a person using a wheelchair to enter or exit the car. These parking spaces are identified with a sign and located on level ground.

### Van-Accessible Parking Spaces
Van-accessible parking spaces are the same as accessible parking spaces for cars except for three features needed for vans:

- a wider access aisle (96") to accommodate a wheelchair lift;
- vertical clearance to accommodate van height at the van parking space, the adjacent access aisle, and on the vehicular route to and from the van-accessible space, and
- an additional sign that identifies the parking spaces as "van accessible."

One of eight accessible parking spaces, but always at least one, must be van-accessible.



### Minimum Number of Accessible Parking Spaces
ADA Standards for Accessible Design 4.1.2 (5)

| Total Number of Parking spaces Provided (per lot) | Total Minimum Number of Accessible Parking Spaces (60" & 96" aisles) | Van Accessible Parking Spaces with min. 96" wide access aisle | Accessible Parking Spaces with min. 60" wide access aisle |
|---|---|---|---|
| | Column A | | |
| 1 to 25 | 1 | 1 | 0 |
| 26 to 50 | 2 | 1 | 1 |
| 51 to 75 | 3 | 1 | 2 |
| 76 to 100 | 4 | 1 | 3 |
| 101 to 150 | 5 | 1 | 4 |
| 151 to 200 | 6 | 1 | 5 |
| 201 to 300 | 7 | 1 | 6 |
| 301 to 400 | 8 | 1 | 7 |
| 401 to 500 | 9 | 2 | 7 |
| 501 to 1000 | 2% of total parking provided in each lot. | 1/8 of Column A* | 7/8 of Column A** |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/8 of Column A* | 7/8 of Column A** |

\* one out of every 8 accessible spaces    \*\* 7 out of every 8 accessible parking spaces

## Location

Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances.

When accessible parking spaces are added in an existing parking lot, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3-feet wide, and has a firm, stable, slip-resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel.

Accessible parking spaces may be clustered in one or more lots if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement).

## Free Technical Assistance

Answers to technical and general questions about restriping parking lots or other ADA requirements are available by telephone on weekdays. You may also order the ADA Standards for Accessible Design and other ADA publications, including regulations for private businesses or State and local governments, at any time day or night. Information about ADA-related IRS tax credits and deductions is also available from the ADA Information Line.

Department of Justice
**ADA Information Line**

**800-514-0301 (voice)**
**800-514-0383 (tty)**

## Features of Accessible Parking Spaces for Cars



Sign with the international symbol of accessibility mounted high enough so it can be seen while a vehicle is parked in the space.

If the accessible route is located in front of the space, install wheelstops to keep vehicles from reducing width below 36 inches.

accessible route (min. 36-inch width)

Access aisle of at least 60-inch width must be level (1:50 maximum slope in all directions), be the same length as the adjacent parking space(s) it serves and must connect to an accessible route to the building. Ramps must not extend into the access aisle.

Boundary of the access aisle must be marked. The end may be a squared or curved shape.

Two parking spaces may share an access aisle.

| 96" min. | 60" min. | 96" min. |
| 2440 | 1525 | 2440 |

## Three Additional Features for Van-Accessible Parking Spaces



Sign with "van accessible" and the international symbol of accessibility mounted high enough so the sign can be seen when a vehicle is parked in the space

accessible route

**96" min. width access aisle,** level (max. slope 1:50 in all directions), located beside the van parking space

**Min. 98-inch-high clearance** at van parking space, access aisle, and on vehicular route to and from van space

| 96" min. | 96" min. | 96" min. |
| 2440 | 2440 | 2440 |

## Internet

You may also review or download information on the Department's ADA Internet site at any time. The site provides access to ADA regulations, technical assistance materials, and general ADA information. It also provides links to other Federal agencies, and updates on new ADA requirements and enforcement efforts. Internet address: www.usdoj.gov/crt/ada/adahom1.htm

## Reference:

ADA Standards for Accessible Design (28 CFR Part 36):

§ 4.1.6 Alterations;
§ 4.1.2 Accessible Sites and Exterior Facilities: New Construction; and
§ 4.1.6 Parking and Passenger Loading Zones.

Duplication of this document is encouraged.

MICHAEL K. JEANES. CLERK
BY /S. Reth DEP
B. RETH FILED

16 JUN 29  PM 3: 51

Peter Strojnik, State Bar No. 6464
**STROJNIK P.C.**
1 EAST WASHINGTON STREET, SUITE 500
PHOENIX, AZ 85004
(774) 768-2234
Attorney for Plaintiff
Case Specific Email Address:
2706EUNIVERSITYDR@aadi.org
www.aid.org

ORIGINAL

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Advocates for Individuals with Disabilities Foundation, Inc., | Case No: CV2016-006898 |
| Plaintiff, | |
| vs. | **SUMMONS** |
| GOLDEN RULE PROPERTIES LLC | IF YOU WANT THE ADVISE OF A LAWYER, YOU MAY WISH TO CONTACT THE LAWYER REFERRAL SERVICE AT 602-257-4434 OR ONLINE AT WWW.LAWYERSFINDERS.ORG |
| Defendants. | LRS IS SPONSORED BY THE MARICOPA COUNTY BAR ASSOCIATION. |

**TO THE ABOVE NAMED DEFENDANT(S):**

**YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona – whether by direct mail, by registered or certified mail, or by publication – you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. When process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of process against it in this State, the insurer shall not be required to appear, answer or plead until the expiration of 40 days of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service by mail is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after the Affidavit of Compliance and return receipt of Officer's Return. **RCP 4.1 and 4.2; A.R.S. §§ 20-222, 28-502, 28-503.**

**YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint. **YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of the Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or Response upon Plaintiff's attorney, or if Plaintiff is not represented by counsel, upon Plaintiff.

A request for reasonable accommodations for persons with disabilities must be made to the division assigned to the case by the parties at least three (3) days before the scheduled court proceeding.

The name and address of Plaintiff is:

Advocates for Individuals with Disabilities Foundation Inc.
40 North Central Avenue, Suite 1400
Phoenix, AZ 85004
**JUN 0 9 2016**

SIGNED AND SEALED this date:

MICHAEL K. JEANES, CLERK

Megan Racu

Clerk of Court

MICHAEL K. JEANES, CLERK
BY: M Rocee
DEP
FILED.

16 JUN -9· PM 2: 24

1   Peter Strojnik, State Bar No. 6464
    **STROJNIK P.C.**
2   1 EAST WASHINGTON STREET, SUITE 500
    PHOENIX, AZ 85004
3   (774) 768-2234
4   Attorney for Plaintiff
    Case Specific Email Address:
5   2706EUNIVERSITYDR@aadi.org
    www.aid.org
6

7

8                  **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9                     **IN AND FOR THE COUNTY OF MARICOPA**

10

11  Advocates for Individuals with Disabilities
    Foundation, Inc.,                          Case No:    CV2016-006898
12
                        Plaintiff,
13                                              **CERTIFICATE OF**
14  vs.                                         **ARBITRATION**

15  GOLDEN RULE PROPERTIES LLC

16                      Defendant.

17

18

19        The above cause is not subject to compulsory arbitration.

20        RESPECTFULLY SUBMITTED this Friday, June 3, 2016.

21

22
                                Peter Strojnik, State Bar No 6464
23

24

25

26

27

28